# In the United States Court of Federal Claims

|  |  |
|---|---|
| JEFFREY S. ADAMS,<br><br>        Plaintiff,<br><br>        v.<br><br>THE UNITED STATES,<br><br>        Defendant. | No. 21-2115C<br>Filed June 12, 2025 |

John B. Wells, Law Office of John B. Wells, Slidell, LA, for plaintiff.

Patrick S. Angulo, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Denying Mr. Adams's Motion for Judgment on the Administrative Record and Granting the Government's Cross-Motion for Judgment on the Administrative Record**

    Jeffrey Adams filed a complaint in this court seeking review of the Army's decision to discharge him before he was eligible for retirement. Mr. Adams alleged that, but for an inaccurate and improperly timed evaluation, he would have served in his position until retirement. The court remanded Mr. Adams's claims to the Army Board for Correction of Military Records; the corrections board agreed with Mr. Adams and removed the evaluation from Mr. Adams's record. The corrections board determined that Mr. Adams was entitled to back pay up to 20 years of active service, after which he would have reached retirement eligibility and received retirement benefits. The corrections board ordered the Defense Finance and Accounting Service (DFAS) to facilitate payment of back pay and retirement benefits. DFAS notified Mr. Adams that it would facilitate payment while deducting the separation pay he had previously, erroneously, received upon discharge.

1

The parties have now each moved for judgment on the administrative record. Mr. Adams argues (1) that the corrections board's decision to retire him at 20 years instead of the 26 years of service he claims he was eligible to serve was arbitrary and capricious and (2) that the government improperly reduced the payment it made to him by deducting the separation pay he received when he was improperly discharged from active service. The government argues (1) that the corrections board reasonably retired Mr. Adams at 20 years of service, when that was all he requested, and (2) that, in calculating Mr. Adams's payment, the corrections board was correct to deduct the separation pay Mr. Adams previously erroneously received. The record shows that the corrections board's decision is reasonable and supported by substantial evidence, as Mr. Adams requested pay for only 20 years of active service, and he is not entitled to a double recovery of separation pay and active-duty pay for the same time period. Thus, the court will deny Mr. Adams's motion for judgment on the administrative record and grant the government's motion.

**I.    Background**

Mr. Adams joined the Army as a member of the Army Field Band in 1998. AR410.[1] After completing basic training, Mr. Adams was promoted to staff sergeant, a non-commissioned officer position. ECF No. 45 at 1-2 [¶4].

About fifteen years later, Mr. Adams's 2013 non-commissioned officer report included a substandard evaluation, noting that Mr. Adams was relieved of his duties as road manager for the band and that he received ethics training for improperly using his position for personal gain during

---

[1] The administrative record is available at ECF Nos. 48 through 48-3.

the evaluation period. AR156-58. Because of the negative evaluation, the Army referred Mr. Adams to a qualitative management program board.[2] ECF No. 45 at 3 [¶7]. The qualitative management board evaluates whether non-commissioned officers with substandard evaluations are eligible for continued service or should be involuntarily separated from the Army. ECF No. 22-1 at DA1-4.

Mr. Adams challenged his substandard evaluation at a special review board, arguing that the evaluation included substantive inaccuracies, including inaccurate comments made by his senior rater. AR233. The special review board denied Mr. Adams's requested relief. AR223. The qualitative management board also completed its evaluation and ordered his involuntary discharge. ECF No. 45 at 4 [¶13]. Mr. Adams sought reconsideration of the qualitative management board's determination, arguing that the ethics counseling he received was outside the relevant evaluation period. ECF No. 45 at 3 [¶14]. The qualitative management board denied relief, and in November 2015, Mr. Adams was honorably discharged at his then-current rank of sergeant first class. AR391. As part of his separation, Mr. Adams received a lump-sum separation payment of $88,239.84. ECF No. 45 at 8 [¶32].

After being discharged, Mr. Adams requested that a special military board review his dismissal. AR125; *see* 10 U.S.C. § 1558. Mr. Adams asked the special military board to restore him to active duty, with back pay retroactive to the date of his discharge. AR153. The special military board reviewed Mr. Adams's case and denied his petition. AR115-21. While his request to the special military board was pending, Mr. Adams filed his initial complaint in this court. ECF No. 1. After the board denied his petition, Mr. Adams amended his complaint, arguing that the board's

---

[2] For the reader keeping track, this case involves four separate military boards: (1) the qualitative management board, (2) a special review board, (3) another special military board, and (4) the corrections board.

decision was arbitrary and capricious, contrary to law, and unsupported by substantial evidence. ECF No. 13 at 8-12 [¶¶42, 48, 62]. In his amended complaint, Mr. Adams requested that he "be restored to active duty until his nominal retirement date of 1 July 2018 and that he be retired as of that date, with all back pay and allowances," or that "[i]n the alternative he be returned to active duty in the grade of E-7 effective November 1, 2015 until that High Year Tenure or end of service date and that he be retired as of that date." *Id*. at 12 [¶64].

In November 2022, the government asked the court to remand Mr. Adams's claims to the corrections board, which had not yet addressed Mr. Adams's case, to "review Mr. Adams's argument that his conduct did not violate Army regulations." ECF No. 22 at 6. Although Mr. Adams opposed the remand, the court granted it, providing the corrections board with the following instructions:

> 1. Determine and explain whether the conduct discussed in Mr. Adams's February 28, 2013 Non-Commissioned Officer evaluation and March 3, 2013 counseling violate the applicable military regulations;
>
> 2. Allow Mr. Adams to submit any other arguments or evidence to the ABCMR [corrections board] within thirty days of the remand order; and,
>
> 3. Determine and explain whether Mr. Adams is entitled to any relief, including correction of records and retirement pay, based upon any errors or injustices found.

ECF No. 25 at 2.

Mr. Adams submitted a supplemental brief to the corrections board. AR78-106. In that brief, Mr. Adams mentioned only a 20-year retirement date. He discussed the safe harbor provision that automatically retains enlisted service members until their 20-year date who have served more than 18 but less than 20 years. *See* AR92 (citing 10 U.S.C. § 1176). He argued that, had he not received a negative evaluation, he "would have [been] another year closer to retirement and in the

safe harbor provision provided by 10 U.S.C. § 1176." AR95. He argued that the Army acted contrary to law "by involuntarily dismissing him only 5 months shy of his guaranteed retirement." AR103. Similarly, Mr. Adams asserted that he had "a significant property interest in his job since he was less than 8 months shy of locking-in guaranteed retirement from the Army." AR105; *see* AR104 ("[Mr. Adams] was additionally deprived of his opportunity to cement his retirement from the Army less than 8 months from the time his retirement accrued."); AR105 ("[The Army] deprived him of his accrued property interest in not only his job, but his nearly guaranteed retirement."). Although Mr. Adams concluded by requesting "all back pay and benefits" (AR106), none of the arguments in his supplemental brief requested more than 20 years of active-duty pay. *See* AR83-105.

In July 2023, the corrections board issued a decision granting Mr. Adams all the relief he requested. ECF No. 33 at i-ii (cover pages of board decision). The corrections board found that because the "preponderance of the evidence suggests [that Mr. Adams] did not violate ethics regulations, the Board determined an injustice occurred when [Mr. Adams] received the [non-commissioned officer evaluation] in question." *Id*. at 17. The corrections board ordered that the non-commissioned officer evaluation be removed from Mr. Adams's record and that Mr. Adams be credited "with 2 years, 7 months, and 23 days of active service (with full pay and allowances, less any separation pay he received) until completion of 20 active duty years." *Id*. at 18. The corrections board also ordered that Mr. Adams be placed "on the retired list [at] the grade of sergeant first class/E-7 on the date he would have completed 20 years of active service." *Id*.

The corrections board sent its decision to DFAS to facilitate the payment. ECF No. 33 at ii. In December 2023, DFAS sent Mr. Adams a letter informing him that it would deduct the $88,239.84 in separation pay he had previously received from his total pay for the additional years

5

of service and retirement. *See* ECF No. 41-1. In April 2024, DFAS finalized its calculations. ECF No. 43 at 1. Mr. Adams notified DFAS that he intended to contest the amount. *Id*. at 1-2. In June 2024, Mr. Adams filed a second amended complaint in this court, challenging aspects of the corrections board's remand decision, requesting that he "be returned to active duty in the grade of E-7 effective November 1, 2015 until that High Year Tenure or end of career service date and that he be retired as of that date, with all back pay and allowances," and that he be "awarded $88,239.84 improperly withheld from the implementation of the decision of the" corrections board. ECF No. 45 at 11 [¶52]. Both parties moved for judgment on the administrative record. ECF Nos. 50, 52, 55, 56, 57.

## II.     Discussion

Mr. Adams argues that the government (1) improperly withheld pay and allowances by retiring him at 20 years of service instead of 26 years; and (2) improperly reduced his pay by deducting the separation pay he received at discharge. ECF No. 50 at 5. The government argues that (1) Mr. Adams waived the argument that he be retired at 26 years instead of 20 by not raising it before the corrections board; (2) the corrections board did not act arbitrarily or capriciously when it granted Mr. Adams the relief he requested; and (3) regulations prohibit the windfall of $88,239.84 Mr. Adams seeks, and he cannot have both (a) the separation and disability pay he received in 2015 and (b) the retroactive retirement benefits he has recently been found to be entitled to.

This court's jurisdiction is primarily defined by the Tucker Act, which provides the court with exclusive jurisdiction to decide specific types of monetary claims against the United States. *See* 28 U.S.C. § 1491(a)(1); *see also Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994). The Tucker Act gives this court jurisdiction to decide "actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions." *Roth v. United States*, 378

6

F.3d 1371, 1384 (Fed. Cir. 2004); *see* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded … upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contracts."). The Military Pay Act, 37 U.S.C. § 204, is a money-mandating statute that "provides for suit in the Court of Federal Claims when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay." *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004).

On a motion for judgment on the administrative record, this court must determine whether, given all disputed and undisputed facts, the evidence in the record establishes that the moving party has met its burden of proof. *Palantir USG, Inc. v. United States*, 904 F.3d 980, 989 (Fed. Cir. 2018). In a military pay case, the court reviews an administrative action—in this case, the corrections board's decision—and determines whether that action is "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998).

The court owes "substantial deference" to the corrections board; it "does not sit as a 'super correction board.'" *Chapman v. United States*, 92 Fed. Cl. 570, 577 (2010), *aff'd*, 427 F. App'x 897 (Fed. Cir. 2011) (quoting *Skinner v. United States*, 594 F.2d 824, 830 (Ct. Cl. 1979)). It is not this court's role to "reweigh" the evidence. *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). Thus, as long as the corrections board "considered the relevant evidence and came to a reasonable conclusion, this court will not disturb" the corrections board's decision. *Riser v. United States*, 97 Fed. Cl. 679, 683-84 (2011).

This case's posture is unusual because Mr. Adams filed suit here before having a final decision from the special military board and without having gone through the corrections board at

all. This court sent the case to the corrections board in the first instance. ECF No. 25. This court has concurrent jurisdiction with the corrections board. *Martinez v. United States*, 333 F.3d 1295, 1309-10 (Fed. Cir. 2003) (en banc) (explaining that this court and the corrections board can consider a servicemember's case at the same time, or this court can stay a case pending a decision by the corrections board). But once the corrections board has issued a final decision, this court reviews that decision applying the usual standard of review. *Porter*, 163 F.3d at 1312.

The court reviews factual findings for substantial evidence. *Heisig*, 719 F.2d at 1157. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). It may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent" the court from concluding that substantial evidence supports the board's decision. *Matsushita Electric Industrial Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619-20 (1966)).

Mr. Adams bears the burden of showing by "cogent and clearly convincing evidence" that the corrections board's actions were arbitrary and capricious. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973)). It is also his burden to overcome the "presumption of regularity that attaches to all administrative decisions," as well as the "the strong, but rebuttable, presumption that administrators of the military … discharge their duties correctly, lawfully, and in good faith." *Chapman*, 92 Fed. Cl. at 577 (quoting *Richey v. United States*, 322 F.3d 1317, 1326 (Fed. Cir. 2003), and *Doe v. United States*, 132 F.3d 1430, 1434 (Fed. Cir. 1997)). Mr. Adams must show support in the administrative record for his

positions to prevail on a motion for judgment on that record. *See Facility Healthcare Services, Inc. v. United States*, 158 Fed. Cl. 254, 257-58 (2022).

### A. The corrections board did not act arbitrarily or capriciously when it granted Mr. Adams the relief he requested

Mr. Adams argues that his position and rank would have allowed him to serve for 26 years, and the corrections board therefore acted arbitrarily and capriciously by granting him retirement with only 20 years of service. ECF No. 50 at 12-13. The government responds that the corrections board granted Mr. Adams the entire relief he requested, so the board's decision cannot be arbitrary or capricious, and that Mr. Adams waived the argument for 26 years of service. ECF No. 52 at 14-16. The government is correct.

As an initial matter, a party who makes an argument before the board cannot later complain that the board erred if it adopts or agrees with that argument. *Key Pharmaceuticals v. Hercon Laboratories Corp.*, 161 F.3d 709, 714-15 (Fed. Cir. 1998) ("The impropriety of asserting a position which the trial court adopts and then complaining about it on appeal should be obvious on its face, and litigants hardly need warning not to engage in such conduct."); *Cordis Corp. v. Medtronic AVE Inc.*, 511 F.3d 1157, 1172 (Fed. Cir. 2008) (explaining that, under the doctrine of invited error, a party ordinarily cannot dispute on appeal a jury instruction that the party itself proposed). As the one challenging the corrections board's decision, it is Mr. Adams's burden to show that the corrections board acted in a way that is arbitrary or capricious, not in accordance with law, or not supported by substantial evidence. *Porter*, 163 F.3d at 1312. Because the corrections board granted Mr. Adams the relief he requested, he has not met that burden.

In his first amended complaint, Mr. Adams argued that he should be "restored to active duty until his nominal retirement date of 1 July 2018," which was at 20 years of service. ECF No. 13 at 12 [¶64]. This court sent the case to the corrections board to "[a]llow Mr. Adams to submit

9

any other arguments or evidence ... and determine and explain whether Mr. Adams is entitled to any relief, including correction of records and retirement pay." ECF No. 25 at 2. Mr. Adams submitted a supplemental brief with eight arguments, none of which requested more than 20 years of active-duty service. AR78-106. In his brief, Mr. Adams repeatedly referred to his loss of a guaranteed 20-year retirement date. *See supra* Part I; AR92; AR103 (arguing that his dismissal was improper and "only 5 months shy of his guaranteed retirement"); AR104 (arguing that he had a property interest in his guaranteed retirement, which accrues at 18 years of service); AR105 (same); AR95 (arguing that, without the negative evaluation, he would have been in the safe harbor window for retirement). The safe harbor provision that Mr. Adams presented to the board, 10 U.S.C. § 1176, guarantees retention until 20 years of service for active-duty service members who have served at least 18 years, unless they are retired or legally discharged. AR92; *see* AR95. Mr. Adams never requested any number of years of service beyond 20. *See* AR78-106.

Even if a request to be restored "to active duty along with all back pay and benefits" (AR106) encompassed a request for more than 20 years as well as a request for 20 years of active-duty service, it is now Mr. Adams's burden to show that it was improper for the corrections board to choose one form of relief over the others. He does not dispute that retirement at 20 years was among the forms of relief he requested from the corrections board. *See* ECF Nos. 50, 55. Because the corrections board granted him that relief, Mr. Adams cannot now argue that the correction's board's decision was arbitrary or capricious.

Addressing the same facts under a slightly different doctrine, Mr. Adams waived review of an argument for more than 20 years of active-duty service. "In situations in which a plaintiff seeks relief from a military corrections board and later brings suit in court, any argument not previously raised before the corrections board is waived." *Exnicios v. United States*, 140 Fed. Cl. 339,

10

364 (2018); s*ee Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006) ("[A] plaintiff may waive an argument with respect to [a non-jurisdictional] issue by not asserting it before the Board."). In the closing of his brief to the corrections board, Mr. Adams stated that it "should set aside the improper discharge and restore SFC Adams to active duty along with all back pay and benefits." AR106; *see* ECF No. 55 at 7. A single sentence in closing is not an argument, nor does that sentence identify the 26 years that Mr. Adams now requests or any particular number of years. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("a passing reference to an issue ... will not suffice to bring that issue before this court").

Mr. Adams argues that the court's remand was limited to deciding only the issue of the correctness of the military's earlier decision, but he does not explain in what way the court's order prevented him from arguing, or the corrections board from considering, the possibility of more than 20 years of service. *See* ECF No. 57 at 5-6. The court ordered the corrections board to consider any arguments or evidence Mr. Adams presented; he chose not to argue for additional years of service and therefore waived review of that issue. *Metz*, 466 F.3d at 998; *see Thomas v. United States*, 42 Fed. Cl. 449, 454 (1998), *aff'd*, 217 F.3d 854 (Fed. Cir. 1999) ("Clearly, the ABCMR [corrections board] was not arbitrary, capricious or unlawful in not awarding relief which was not requested."); *Burns v. United States*, 9 Cl. Ct. 273, 278 (1985) ("It would scarcely be appropriate to deem arbitrary or capricious a failure to grant a request never made.").

In briefing to this court and in the oral argument, the parties agreed that Mr. Adams could have retired at 20 years but might have been eligible to serve in active duty longer than 20 years. *See* ECF No. 33 at 17 (corrections board stating that "it is reasonable to believe that Mr. Adams would have continued his active service until at least 'length of service' retirement (20 years)"). The parties disagree over whether Mr. Adams might have been eligible to serve for 26 years or

11

another length of time. *Compare* ECF No. 50 at 13 (requesting 26 years) *with* ECF No. 52 at 15 (identifying 24 years or 30 years as possible retention control points for Army sergeant first class personnel). Because the corrections board reasonably granted Mr. Adams all the relief he requested, the court need not address which retention control point might have been applicable to Mr. Adams or whether he might have been eligible to receive a later retirement date. As the government explained in the oral argument, Mr. Adams may file a new request at the corrections board seeking credit for more than 20 years of service.

### B. DFAS correctly deducted Mr. Adams's separation pay from his retirement benefits

The corrections board granted Mr. Adams "full pay and allowances, less any separation pay he received." ECF No. 33 at 20. DFAS told Mr. Adams that it would reduce his retirement pay by the $88,239.84 he had received as separation pay. ECF No. 41-1 at 1. Mr. Adams argues that this offset amounts to a double withholding because the government extinguished the debt he owed when it recouped his separation pay through deductions from his disability pay. ECF No. 50 at 14-15. Mr. Adams alternatively argues that DFAS should not have recouped the separation pay because the government recouped it outside the statute of limitations. *Id*.

When the military errs in paying a servicemember, federal statutes and military regulations require the government to pay him what he would have been paid but for the military's error. When a servicemember received separation pay as a result of being discharged too early, the government must provide back pay and retirement benefits for the correct retirement date and must subtract the separation pay the servicemember already received. 10 U.S.C. § 1174(h)(1); DoD FMR, Vol. 7A, Ch. 1, ¶3.1.6 ("Corrections of Military Record: … [A]mounts paid to a member for military retired pay, separation pay, severance pay, and/or VA pension or compensation during what is now a period of active duty under a record correction must be taken into account when determining the

12

amount of retroactive military pay and allowances due, if they have not otherwise been recouped or accounted for."). Here, DFAS correctly subtracted the separation pay that Mr. Adams previously received from the total he was owed.

Mr. Adams's argument that he already repaid his separation pay through deductions from his disability benefits misunderstands the impact of the corrections board's decision. Mr. Adams assumes that DFAS's offsetting his retirement pay by the separation pay is a double offset because the Department of Veterans Affairs (VA) already withheld that amount from his disability benefits. *See* ECF No. 50 at 14; *see* 10 U.S.C. § 1174(h)(2) ("[T]here shall be deducted from that disability compensation an amount equal to the total amount of separation pay."). However, because the corrections board restored him to active duty and then retired him at 20 years of service, Mr. Adams was eligible for neither separation pay nor disability benefits. *McCord v. United States*, 943 F.3d 1354, 1357 (Fed. Cir. 2019) (explaining that 10 U.S.C. § 5304(a)(1) "bars a veteran from receiving both military retirement pay and VA benefits"); 10 U.S.C. § 1174(h) ("A member who has received separation pay … and who later qualifies for retired or retainer pay ... shall have deducted from each payment of such retired or retainer pay an amount ... until the total amount deducted is equal to the total amount of separation pay [received]."). Thus, by offsetting Mr. Adams's retirement pay by the benefits he received earlier, DFAS is placing him in the position he would have been in had he completed his service and retired after 20 years of active-duty service. *McCord*, 943 F.3d at 1358 (Allowing a servicemember to recover more than he would have received in the first place "would be contrary to the very purpose of the Military Pay Act which only entitles a plaintiff to recover money in the form of the pay that the plaintiff would have received but for the unlawful action." (marks omitted, quoting *Martinez*, 333 F.3d at 1303)).

13

Mr. Adams's statute-of-limitations argument also lacks merit. Mr. Adams argues that 28 U.S.C. § 2415 bars DFAS from applying the statutory offset because DFAS's actions are outside the limitations period; he was given that separation pay in 2015, and it was withdrawn in 2024. ECF No. 50 at 14-15. As an initial matter, that argument misunderstands the entire theory of damages. The damage that Mr. Adams has suffered is the total amount of money he did not receive based on the military's error. It makes no sense to allow him a windfall of a double recovery simply because the military's error gave him some money and took other money away. If his lawsuit was timely, which he believes it was, his damages must be limited to only the money he missed out on. In fact, Mr. Adams appears to understand that, shifting his argument to allege that the double recovery would compensate him for litigation costs, interest on credit cards, and emotional distress. ECF No. 55 at 9. But this court provides damages, and he is requesting damages. Mr. Adams cannot recategorize a claim for double damages as an attempt at equitable relief.

Further, § 2415 applies to an "action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact." 28 U.S.C. § 2415(a). The government did not bring an action against Mr. Adams, nor is Mr. Adams's suit founded upon a contract; it is founded on the Military Pay Act. *Siemietkowski v. United States*, 86 Fed. Cl. 193, 198 (2009) ("It is well-settled that a claim for military pay, including separation pay, is controlled by statute."). And the general limitations period in § 2415 applies only where Congress has not provided otherwise; here, Congress established a specific statute for separation pay, 10 U.S.C. § 1174.

Mr. Adams also argues that DFAS is prohibited from recovering his separation pay by the Barring Act, 31 U.S.C. § 3201. Like § 2415, the Barring Act "provides a mechanism for settling military-related claims against the government that are not covered in other statutory provisions."

*Soto v. United States*, 92 F.4th 1094, 1097 (Fed. Cir. 2024), *rev'd in part on other grounds*, No. 24-230 (U.S. June 12, 2025). At oral argument, Mr. Adams noted that the Supreme Court heard and had not yet decided *Soto*, a case that addresses the Barring Act as it affects a military compensation statute. Since then, the Court decided the case, determining that servicemembers with combat-related disabilities are not subject to the Barring Act's statute of limitations because the statute allowing for combat-related special compensation displaced the Barring Act's procedures and limitations. *See Soto,* No. 24-320, slip op at 11-12. The Court's decision in *Soto* is limited to combat-related special compensation claims and does not impact claims under the Military Pay Act. *See Soto*, 92 F.4th at 1098 (explaining that claims under the Military Pay Act are not subject to the Barring Act). Because separation pay is governed by more a more specific provision, 10 U.S.C. § 1174, the Barring Act's limitations period does not impact DFAS's actions.

### III.  Conclusion

For the reasons stated above, this court **grants** the government's motion for judgment on the administrative record and **denies** Mr. Adams's motion for judgment on the administrative record. The clerk of the court shall enter judgment accordingly.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge